**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

KELBESSA NEGEWO,                :

    Petitioner,                            :

vs.                                                :        CA 06-0631-WS-C

MICHAEL CHERTOFF, etc.,    :
et al.,[1]
                                                         :

    Respondents.

## **REPORT AND RECOMMENDATION**

On October 5, 2006, Kelbessa Negewo, a native and citizen of Ethiopia ordered removed from the United States, petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241. This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed because petitioner is no longer in the custody of the United States Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, having been repatriated to his native

---

[1] Robert Gaines is no longer the acting warden of the Perry County Correctional Center. Accordingly, pursuant to the provisions of Rule 25(d) of the Federal Rules of Civil Procedure, the new warden of the Perry County Correctional Center, David O. Strieff, is hereby substituted for Gaines as a proper respondent in this action.

country of Ethiopia.

## FINDINGS OF FACT

1.  Negewo is a native and citizen of Ethiopia who entered the United States, on a student visa, in 1987. (Doc. 1, at 3; *but cf.* Doc. 14, Exhibit A (reflects petitioner's entry to the United States was made on November 29, 1990)) Petitioner "became a lawful permanent resident of the U.S. in 1988 and then adjusted his status to U.S. citizen in 1995." (Doc. 1, at 4)

2.  On or about September 13, 1990, three plaintiffs (natives of Ethiopia) sued Negewo in the Northern District of Georgia under the Alien Tort Statute for acts of torture committed by Negewo against their persons "in 1977 and 1978 in Addis Ababa, Ethiopia during a period known as the 'Red Terror.'" *Abebe-Jiri v. Negewo*, 1993 WL 814304, at *1 & *4-5 (N.D. Ga. 1993), *aff'd*, 72 F.3d 844 (11th Cir.), *cert. denied*, 519 U.S. 830, 117 S.Ct. 96, 136 L.Ed.2d 51 (1996). Each plaintiff received a significant compensatory and punitive damage award against Negewo. *See id.* at *4-5.

3.  On May 18, 2001, the United States filed an action to revoke Negewo's naturalized citizenship, pursuant to 18 U.S.C. § 1451, in the Northern District of Georgia. (Doc. 14, Exhibit F) On October 18, 2004, the parties reached a settlement agreement and consent judgment. (Doc. 14,

Exhibits D & E) The consent judgment reads, in its entirety, as follows:

> The United States of America filed a complaint, pursuant to 8 U.S.C. § 1451(a), seeking to revoke Kelbessa Negewo's naturalized citizenship and cancel his certificate of naturalization. The complaint alleges that Mr. Negewo procured his citizenship illegally because he had not been lawfully admitted for permanent residence pursuant to all applicable provisions of the Immigration and Nationality Act. 8 U.S.C. §§ 1427(a)(1), 1429.
>
> Mr. Negewo has read and understands the Complaint and its supporting Affidavit of Good Cause and consents to the entry of an order revoking his naturalization pursuant to Count I of the Complaint and 8 U.S.C. § 1451(a). The parties have also entered into a Settlement Agreement concerning this matter, attached as Exhibit A, and incorporated herein.
>
> THEREFORE, pursuant to the Settlement Agreement and 8 U.S.C. § 1451(a), IT IS HEREBY ORDERED:
>
> 1.    The July 28, 1995 order of naturalization admitting Mr. Negewo to United States citizenship, is REVOKED and SET ASIDE and Certificate of Naturalization No. 21 257 229 issued by the Attorney General of the United States, is CANCELLED.
>
> 2.    From the date of this Order, Mr. Negewo is forever RESTRAINED and ENJOINED from claiming any rights, privileges, or advantages under any document that purports to evidence United States citizenship obtained as a result of his naturalization on July 28, 1995.
>
> 3.    Defendant shall SURRENDER and DELIVER his Certificate of Naturalization, any copies thereof in his possession, and any other indicia of United States citizenship, to the Attorney General of the United States, or his representative within ten days of the entry of this Order.

(Doc. 14, Exhibit E) Paragraph 5 of the parties' settlement agreement specifically recognized the following: "Nothing in this Agreement shall be construed to limit the United States from commencing any action against the Defendant, including, but not limited to, proceedings to seek the removal of the Defendant from the United States." (Doc. 14, Exhibit D, ¶ 5)

4. Petitioner was taken into custody by ICE on January 4, 2005. (Doc. 1, ¶ 5) Pursuant to a final order of removal by the Board of Immigration Appeals, a warrant of removal/deportation was issued by ICE against Negewo on July 31, 2006. (Doc. 14, Exhibit A) On October 19, 2006, petitioner was deported to his native country of Ethiopia. (Doc. 14, Exhibit B; *see also* Doc. 17, Exhibit 1 to Exhibit A (Negewo's travel itinerary))

> 3. Pursuant to a proper Warrant of Removal, beginning on October 19, 2006, on commercial airline flights I escorted Mr. Kelbessa Negewo out of the United States back to his native country of Ethiopia, the country identified in the removal order. On October 19, 2006, along with another Deportation Officer from this Office and representatives from the United States Public Health Service, we departed Atlanta, Georgia, on the following flights: Atlanta-Washington Dulles via Delta Airlines flight 1521; from there, we departed on October 19th from Washington-Dulles to Rome, Italy, via Ethiopian Airlines flight 501 (fuel stop only in Rome); from the refueling stop, we departed Rome on October 20, 2006 to Addis Ababa, Ethiopia, via Ethiopian airlines flight 501 (same flight number as Washington-Rome flight due [to] it being a to fuel stop only). We arrived in Addis Ababa at about 7:30 p.m. Ethiopia time. . . .

    4. Upon our arrival at Addis Ababa, Ethiopia, we personally delivered Mr. Negewo to representatives of the Ethiopian government. I did not record the transfer of custody with anything written. The Ethiopian representatives met the plane and escorted him from the back of the plane. Mr. Negewo was also met by United States Department of State (Addis) Attaché D. Patrick Dorminey. At that point, my mission and travel order were completed, except for my return to Atlamta, Georgia.

    5. I do not know where Mr. Negewo was taken after being repatriated back to his native country and I did not ask for his address. However, I do know that the plane was met by people who appeared by their credentials to be legitimate representatives of the Ethiopian government and by United States Department of State (Addis) Attaché D. Patrick Drominey. There were no incidents or unexpected issues.

(Doc. 17, Exhibit A, Declaration of Marc Stressinger)

  5. In his habeas petition filed on October 5, 2006, Negewo argued that his continued detention by ICE violated the provisions of 8 U.S.C. § 1226(c)(1) (Doc. 1, at 2) and that he was entitled to "release from indefinite detention pursuant to Section 214.13 of IIRIRA . . . [since] there is no significant likelihood that he will be removed to Ethiopia in the reasonable (sic) foreseeable future[.]" (*Id*. at 6) Petitioner sought release from custody and entry of a preliminary and permanent injunction enjoining the respondents from any future unlawful detention of his person. (*Id*.)

## CONCLUSIONS OF LAW

1. "In reviewing a petition for writ of habeas corpus by a detained alien who is subject to a final order of removal, a federal district court, pursuant to the authority of 28 U.S.C. § 2241(c)(3), is to gauge whether a particular set of circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *He v. Gonzales*, 2006 WL 1687796, *1 (W.D. La. 2006). Where, as here, a § 2241 petitioner has been released from federal custody and repatriated to his native country, thereby garnering the relief sought in filing his habeas corpus petition, the issue becomes whether there is any longer a live case or controversy or, instead, if the petition has become moot. *See id*.

2. As recognized by the Eleventh Circuit, "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (citation omitted); *see also Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (same). Moreover, "[t]he doctrine of mootness derives directly from the case or controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Soliman*, 296 F.3d at 1242.

> As this Court has explained, "[p]ut another way, 'a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Therefore, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." In fact. "dismissal is required because mootness is jurisdictional."

*Id.* (internal citations omitted).

3.     Several district courts have determined that once a § 2241 petitioner has been removed from the United States and deported to his native country his petition seeking release from detention and ICE custody becomes moot as "there is no longer a live case or controversy as required under Art. 3, § 2, cl. 1." *Gauchier v. Davis*, 2002 WL 975434, *2 (E.D. La. 2002); *see Xing Hai Liu v. Ashcroft*, 218 F.Supp.2d 1 (D. Me. 2002) (petition for writ of habeas corpus dismissed as moot because petitioner had been returned to China); *Malainak v. Immigration & Naturalization Service*, 2002 WL 220061 (N.D. Tex. 2002) (§ 2241 petition dismissed as moot because petitioner was removed to his native country of Thailand).

4.     This case is indistinguishable from the foregoing cases. Accordingly, this Court finds that Negewo's petition for writ of habeas corpus is now moot because there exists no active case or controversy. This Court can no longer order the federal respondents to immediately release petitioner from

custody pending his removal to Ethiopia, as alluded to in the petition, because Negewo has been repatriated to Ethiopia. "Quite simply, 'there is nothing for us to remedy, even if we were disposed to do so.'" *Soliman, supra*, 296 F.3d at 1243, quoting *Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998). Dismissal of the instant petition is required since mootness is jurisdictional.[2]

## **CONCLUSION**

The Magistrate Judge recommends that Negewo's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, be **DISMISSED** as moot.

The attached sheet contains important information regarding objections

---

[2] The Eleventh Circuit has recognized an exception to the mootness doctrine which the undersigned does not find applicable in the instant case.

> Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated *and* evading review, we have held that "this exception is 'narrow,' and applies only in 'exceptional situations.'" In particular, the exception can be invoked only when "(1) there [is] a reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the *same* complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Simply put, "[t]he remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time."

*Soliman*, 296 F.3d at 1242-1243 (internal citations omitted; emphasis in original). There is nothing to suggest that Negewo will ever find himself again in the custody of ICE since he has been removed from the United States and returned to his native country of Ethiopia. Accordingly, the foregoing exception to the mootness doctrine is inapplicable.

to the report and recommendation of the Magistrate Judge.

**DONE** this the 13th day of December, 2006.

<u>s/WILLIAM E. CASSADY</u>
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE